### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF MARYLAND

| | |
|---|---|
| CHEP USA, <br><br> Plaintiff, <br><br> v. <br><br> E. WESLEY COHEE d/b/a WESCO FARMS, <br> 4605 Williamsburg Church Rd. <br> Hurlock, Maryland 21643-3765 <br><br> Defendant. | Case No.: 1:24-cv-3164 <br><br> **VERIFIED COMPLAINT** |

Plaintiff CHEP USA ("CHEP"), by and through its undersigned attorneys, files this Verified Complaint against Defendant E. Wesley Cohee, d/b/a Wesco Farms ("Defendant").

### PARTIES

1. CHEP is a New York General Partnership with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. The partners of CHEP are Brambles North America Incorporated and Brambles Industries, LLC. Brambles North America Incorporated is a Delaware corporation with its principal office located at 5897 Windward Parkway, Alpharetta, Georgia 30005. Brambles Industries, LLC is a Delaware limited liability company with its principal office located at 5897 Windward Parkway, Alpharetta, Georgia 30005. The sole member of Brambles Industries, LLC is Brambles North America Incorporated, a Delaware corporation with its principal office located at 5897 Windward Parkway, Alpharetta, Georgia 30005.

2. Defendant E. Wesley Cohee is a Maryland resident whose residence is located at 4605 Williamsburg Church Road, Hurlock, MD 21643.

**VERIFIED COMPLAINT**

3. Defendant E. Wesley Cohee operates a sole proprietorship in Maryland d/b/a Wesco Farms. Upon information and belief, Defendant transacts business at 6935 Williamsburg Church Rd., Hurlock, Maryland 21643-3765.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant pursuant to MD. CODE ANN., CTS & JUD. PROC., § 6-102 because Defendant resides in Maryland.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides in this judicial district and a substantial part of the events or omissions and the property that is the subject of this action is occurred in and is situated in this judicial district.

## FACTUAL BACKGROUND

### Pallets and Commerce

7. Typically, as goods move in commerce from their manufacturers, to distributors, and finally to retailers, where they are made available for purchase by the average consumer, wooden pallets are used for purposes of hauling, loading and unloading, and storing the goods.

8. In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes, and level of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called "white wood pallets."

9. In general, these white wood pallets are bought by manufacturers who place their product on these wooden platforms. The manufacturers then sell their product, along with the white wood pallet, to their distributors and/or retailers. The distributors and/or retailers then re-

**VERIFIED COMPLAINT**

use these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them.

10. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to break because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

### CHEP Pallets

11. CHEP offers a better option for the pallet needs of manufacturers, distributors, and retailers.

12. Instead of purchasing new or recycled white wood pallets for each shipment, manufacturers can rent pallets from CHEP as part of a national pallet pool. Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high quality pallets that CHEP owns and maintains. CHEP operates over 150 CHEP service centers across the United States.

13. CHEP pallets are a wood block pallet typically measuring 48 inches by 40 inches. The CHEP pallets have a 4-way entry design that offers greater efficiencies during transport, use, and storage. CHEP pallets have been designed to carry 2,800 pounds in normal operating circumstances with a uniformly distributed load. All CHEP pallets are painted blue on their sides, inscribed with CHEP's logo, and bear the words "PROPERTY OF CHEP." Many CHEP pallets also bear the company's toll-free telephone number. CHEP pallets generally appear as follows:

**VERIFIED COMPLAINT**



14. CHEP has invested significant resources in time and money maintaining superior, reliable, and safe pallets.

15. The CHEP pallet pool rental system facilitates the shared use of high-quality pallets by multiple customers or authorized distribution points. Although there are variations, the following is a general explanation of how the system works. Through agreements, CHEP rents CHEP pallets to manufacturers who use the CHEP pallets as a platform on which to transport goods to distributors and/or retailers. The distributors and/or retailers in turn use the CHEP pallets within their distribution system or stores until the original manufacturer's product is emptied from the CHEP pallet. Based on contractual obligations and/or relying on CHEP's ownership of and right to possess the CHEP pallets, such authorized manufacturers, distributors, and/or retailers are obligated to either transfer CHEP pallets to other CHEP customers or other authorized distribution points within CHEP's system (reporting such transfers), or to arrange for empty pallets to be set aside for return to or collection by CHEP or an authorized CHEP agent. At CHEP service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired (if necessary), repainted/stenciled with CHEP's trademark, and then sent back to manufacturers to repeat the cycle again.

**VERIFIED COMPLAINT**

16. More specifically, the rental process begins with CHEP entering into a rental agreement with a goods manufacturer in need of CHEP pallets. CHEP typically charges manufacturers a pallet rental fee on each CHEP pallet within their possession.

17. Before a manufacturer can ship product on a CHEP pallet to a downstream entity, (i) that manufacturer must first obtain CHEP's approval, or (ii) the downstream entity must already be a CHEP customer or authorized distribution point.

18. In order to retain control and dominion over the CHEP pallets and right to post-rental re-possession of those CHEP pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors and retailers.

19. CHEP's agreements with manufacturers, distributors, and retailers expressly provide that CHEP owns all CHEP pallets and that CHEP pallets may never be bought, sold, or transferred to third parties other than as prescribed in those agreements. Such restriction result in CHEP pallets being returned to CHEP's possession following their authorized use and rental period to be refurbished and recycled. Any transfer of CHEP pallets to someone other than a CHEP customer or other authorized distribution point is strictly prohibited. No one is permitted to sub-lease or otherwise transfer CHEP pallets to any third party not authorized by CHEP.

20. At all times, CHEP remains the owner of all CHEP pallets, and, except for authorized uses pursuant to CHEP's rental and other agreements with third parties (none of which is Defendant), CHEP also retains the absolute right to immediate possession of its pallets and requires their return to CHEP and/or permitted collection for return to CHEP following such authorized uses.

21. Following their intended use or termination of such third party's agreement with CHEP, the subject CHEP pallets must be returned to CHEP (or CHEP must be allowed to recover the CHEP pallet) and "[a]ny other transfer" of the pallets other than to facilitate their return to

5

**VERIFIED COMPLAINT**

CHEP "is strictly prohibited." Thus, other than as permitted during the period of CHEP's pallets' use by CHEP customers or authorized distribution points, and their arranging for return of the CHEP pallets following such use, CHEP maintains the absolute right to immediate re-possession of its pallets.

22.     ***CHEP never sells its pallets or permits their transfer outside of CHEP's rental system***.  The success – indeed the existence – of CHEP's pallet pool rests on the fundamental principle that CHEP maintains ownership over all of its pallets and maintains the right to immediate return and re-possession of its pallets once they are no longer in use by authorized manufacturers, distributors or other users within CHEP's system.  In other words, once a CHEP pallet exits its rental system, the right to immediate possession of that pallet vests in CHEP.  This permits CHEP to inspect and maintain its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

23.     CHEP's unique system, where high quality pallets are constantly monitored, maintained, controlled, tracked, and reused, benefits the entire supply chain.  Manufacturers receive consistent, high-quality pallets, reduced pallet expense, reduced transportation costs, and reduced product damage.  Distributors and retailers benefit from faster loading and unloading, reduced product damage, and reduced pallet expense.

24.     Importantly, the consistent high quality of CHEP's pallets significantly reduces the number of accidents caused by faulty or damaged pallets.  Safety is improved at all levels from the manufacturer's plant to the distribution center to the retail store.

25.     CHEP's system also removes costs and environmental burdens associated with waste disposal.  CHEP estimates that its pallet program saves more than two million tons of solid waste each year.  CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

**VERIFIED COMPLAINT**

26. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers, distributors, and retailers. CHEP continues to invest tens of millions of dollars a year to maintain and supplement its pallet pool.

27. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel. During CHEP's most recently concluded fiscal year, CHEP's asset recovery team conducted more than 100,000 calls and physical visits. In particularly egregious cases, CHEP pursues legal action, both in cooperation with governmental enforcement authorities and independently, to protect, recover and retrieve its pallets. In visiting an entity with which it does not have a contractual relationship, such as recycler, CHEP will make overtures to that entity to consider entering into an agreement with CHEP.

28. The approximate cost to manufacture or replace a CHEP pallet is currently $35.00.

### **Defendant's Conversion and Wrongful Possession of CHEP Pallets**

29. Defendant does not have any direct contractual or other direct business relationship with CHEP.

30. Defendant operates a melon farm located in Hurlock, Maryland. As part of his business, Defendant sells watermelons to at least one of CHEP's customers.

31. Defendant has actively, illegally, and purposefully acquired CHEP pallets from unknown illegal sellers of CHEP pallets on a black market. Defendant has actively purchased and collected – and thereby converted – CHEP pallets for Defendant's business operations.

32. In or around January 2023, CHEP's asset recovery team discovered Defendant was illegally acquiring CHEP pallets on the black market. Thereafter, one of CHEP's Territory Account Representatives ("TAR") spoke with Defendant regarding Defendant's unlawful

**VERIFIED COMPLAINT**

acquisition, use, and possession of CHEP's pallets. Defendant informed CHEP's TAR that he receives CHEP pallets from various "pallet guys" in his area, that he was fully aware of CHEP and its ownership rights in the CHEP pallets, and that he understood the legal ramifications of purchasing CHEP pallets. Defendant agreed that to allow CHEP to recover the CHEP pallets in Defendant's possession and that Defendant would refrain from unlawfully acquiring, possessing, and using CHEP pallets in the future if CHEP agreed to swap the CHEP pallets in Defendant's possession for white wood pallets. Accordingly, in October 2023, CHEP recovered 1,518 CHEP pallets from Defendant and, in exchange, tendered 1,518 white wood pallets to Defendant.

33. On May 14, 2024, CHEP's Asset Recovery Representative ("ARR") Manager received information from a third-party that there were approximately 3,500 CHEP pallets observed at Defendant's facility located at 6935 Williamsburg Church Rd., Hurlock, Maryland 21643-3765.

34. On May 15, 2024, CHEP's ARR visited Defendant's facility and was informed that Defendant was unavailable. CHEP's ARR then spoke with Defendant over the phone. During the call, Defendant stated that he normally communicates with one of CHEP's Asset Protection Managers. CHEP's ARR told Defendant he would have CHEP's Asset Protection Manager contact Defendant. That same day, CHEP's Asset Protection Manager called Defendant, but Defendant did not answer. Defendant then sent CHEP's Asset Protection Manager a text message that stated: "I'll call you later." CHEP's Asset Protection Manager did not receive any further correspondence from Defendant despite sending him a text later the same day. CHEP's Asset Protection Manager sent additional text messages and called Defendant from May 15-17, 2024, but did not receive any responses.

35. On May 20, 2024, CHEP's Asset Protection Manager called Defendant again, but Defendant did not answer. CHEP's Asset Protection Manager then sent a text message to

8
**VERIFIED COMPLAINT**

Defendant.  Defendant called CHEP's Asset Protection Manager back at 9:54 A.M.  During their call Defendant acknowledged that he had approximately 3,000 CHEP pallets, that Defendant still purchases CHEP pallets from local "pallet guys," and that a man he refers to as "Georgie" sells him mixed loads of pallets for $4.00 each.  Defendant stated that he loads the CHEP pallets with his watermelons and ships them back to CHEP's customer base, such as Costco, Walmart, and other supermarket chains.  CHEP's Asset Protection Manager explained to Defendant that it was illegal to buy CHEP pallets on the black market, that CHEP always retains its sole and exclusive ownership rights in the CHEP pallets, and that there are safety standards CHEP pallets must adhere to, including proper inspection, repairs, and sanitation at CHEP's plants.  CHEP's Asset Protection Manager stressed to Defendant that buying CHEP illegally on the black market poses safety and health risks to customers and consumers. Although Defendant acknowledged his understanding, he was unwilling to allow CHEP's recovery of the CHEP pallets in his possession.  CHEP's Asset Protection Manager clarified to Defendant that CHEP's previous agreement to swap CHEP pallets for white wood was contingent upon Defendant's agreement that he would cease and desist unlawfully acquiring, possessing, and using CHEP pallets, and that such swap was no longer an option due to Defendant's failure to stop purchasing CHEP pallets.  Defendant informed CHEP's Asset Recovery Manager that he did not wish to resolve the matter.

36. Despite CHEP's demands that Defendant return the pallets, Defendant has refused to return the pallets, which are all CHEP's property.

37. Defendant is unlawfully acquiring, and possessing CHEP pallets and is continuing to unlawfully use and trade in CHEP pallets despite actual notice and knowledge of CHEP's ownership rights.

38. Prior to the filing of this action, CHEP's Asset Recovery Representative observed 3,500 CHEP pallets located on the premises of Defendant's business facility.  Moreover,

Defendant reaffirmed the quantity of CHEP pallets in his possession during a subsequent conversation with CHEP's Regional Asset Protection Manager.

39. Defendant's refusal to return the CHEP pallets has deprived CHEP of its property and future lease revenue.

### Harm to CHEP

40. CHEP has been and continues to be damaged by Defendant's foregoing and continued actions with respect to its conversion, wrongful possession, and use of CHEP's pallets.

41. While some of the harm to CHEP arising from Defendant's illegal conduct can be compensated through damages, there are other, more serious harms to CHEP that are irreparable and for which there is not an adequate remedy at law.

42. Once removed from CHEP's pallet pool, CHEP loses that property, and the supply chain that relies upon CHEP's pallet pool (i.e., CHEP's legitimate customers and entire business) suffers.

43. The market has certain expectations as to the quality and reliability of CHEP's pallets, the continual maintenance of which is fundamental to CHEP's business. Those expectations arise from the high quality of CHEP's pallets as well as the regular inspection, repair, and sanitizing that CHEP pallets undergo when they are properly returned to a CHEP service center as part of the CHEP pallet pool.

44. When Defendant converts, possesses, and uses CHEP pallets, those CHEP pallets not properly maintained as part of CHEP's pallet pool, and the products stored and/or transported on those pallets are subject to a greater likelihood of damage and destruction, principally because those CHEP pallets do not undergo CHEP's prescribed and rigorous inspection, repair, and sanitizing.

**VERIFIED COMPLAINT**

45. Moreover, any individuals in proximity of such converted CHEP pallets may be subject to physical harm or death due to use of unmaintained CHEP pallets. In such events, because CHEP's clearly recognizable and widely recognized trademark blue pallets (or pieces thereof) would be in proximity of such an event, CHEP's reputation would suffer irreparable harm. As a result, CHEP may be exposed to liability through no fault of its own.

46. Defendant's conversion of CHEP pallets causes substantial damage to CHEP's business model, into which business model CHEP has invested years of labor and hundreds of millions of dollars of capital. For example, Defendant's conversion of CHEP pallets results in such CHEP pallets being taken out of circulation for CHEP's legitimate customers, which destabilizes CHEP's pallet pool rental system, thereby causing CHEP's customers to lose faith in the same and damaging CHEP's business and revenue.

47. Defendant's conversion also degrades the quality of CHEP pallets which in turn frustrates the market's expectations regarding product quality, thus further damaging CHEP's brand, reputation, and business.

48. Therefore, ultimately, Defendant's unlawful misconduct alleged herein results in CHEP's loss of good will and current and future customers.

49. To date, Defendant has failed and refused to either cease its foregoing misconduct or return or allow CHEP to recover its CHEP-owned property and has continued its unauthorized wrongful conduct in converting and using CHEP pallets.

50. Based on the forgoing, Defendant is in wrongful possession of a substantial number of CHEP pallets and, unless enjoined, will continue to damage CHEP by its pattern of conversion, possession, and use of CHEP pallets as alleged herein.

51. As a result of Defendant's actions, CHEP has suffered irreparable injury.

**VERIFIED COMPLAINT**

52. Remedies available at law, including monetary damages, are inadequate to compensate for the injury.

53. The equitable remedy of a permanent injunction is warranted based upon the balance of the hardships between CHEP and Defendant.

54. The permanent injunction sought herein would serve and not harm the public interest.

55. In addition to the foregoing, the cost to CHEP to replace the 3,500 CHEP pallets believed to be in Defendant's possession can be calculated as follows: 3,500 CHEP pallets multiplied by the $35.00 per pallet replacement cost equals $122,500.00.

## COUNT I
## DECLARATORY JUDGMENT

56. The allegations set forth in Paragraphs 1-55 above are incorporated in this Count I as though fully set forth herein.

57. This is a claim for declaratory judgment pursuant to Section 2201 *et seq.* of Title 28 of the United States Code.

58. The CHEP pallets are solely and exclusively CHEP's property. Defendant does not have any ownership, possessory, or other rights.

59. Defendant takes the wrongful position that Defendant owns and may exercise ownership over the CHEP pallets.

60. There is an actual, bona fide, practical, and present need for a declaratory relief and a continuing controversy between the parties regarding their respective rights and obligations with respect to the CHEP pallets.

61. In light of the foregoing, CHEP is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a present controversy based upon the facts alleged above; (ii)

**VERIFIED COMPLAINT**

CHEP's rights are dependent upon the facts alleged above; (iii) Defendant has an actual, present, adverse, and antagonistic interest in this matter; (iv) all antagonistic and adverse interests are before the Court by proper process; and (v) the issues raised by CHEP are not propounded from curiosity and the relief sought is not merely the rendering of legal advice by the Court; there is a bona fide need for a declaration based on present, ascertainable facts.

62. Absent declaratory relief, CHEP will be irreparably injured by Defendant's misconduct alleged herein as well as the likelihood of such future misconduct (i.e., improper seizure and possession of CHEP pallets).

WHEREFORE, Plaintiff CHEP USA respectfully requests that the Court enter a Final Judgment and Order in its favor and against Defendant:

    A.    Declaring that CHEP USA has and is entitled to sole and exclusive ownership over and possession of the CHEP pallets;

    B.    Declaring that Defendant does not have any right, title, or interest in the CHEP pallets; and

    C.    Awarding CHEP other such relief, including any supplemental relief, enjoining Defendant from any future purchase, sale, destruction, dismantling or other treatment or use of CHEP pallets inconsistent with CHEP's ownership rights, as well as a permanent continuing writ of replevin.

**VERIFIED COMPLAINT**

## COUNT II
### CONVERSION

63. The allegations set forth in Paragraphs 1-55 above are incorporated in this Count II as though fully set forth herein.

64. CHEP owns the pallets at issue, which are personal property.

65. At the time Defendant purposefully came into possession of CHEP pallets, Defendant did not own CHEP pallets and did not have any right to possess the CHEP pallets. The known and unknown parties from which Defendant acquired the CHEP pallets at issue similarly had no ownership or other contractual right to sell or otherwise transfer such CHEP pallets to Defendant.

66. Defendant has in the past and continues to exercise dominion and control over CHEP pallets despite notice to Defendant that he does not have any ownership or possessory rights with respect to the CHEP pallets.

67. Defendant's actions are inconsistent with CHEP's ownership of CHEP pallets.

68. The value of the CHEP pallets in Defendant's possession amounts to $122,500.00.

69. CHEP has been damaged by Defendant's actions.

WHEREFORE, Plaintiff CHEP USA respectfully requests the Court grant the following relief:

1. A permanent injunction against Defendant: (i) prohibiting any further purchase, possession, use, resale or other transfer of CHEP pallets without permission from CHEP, (ii) mandating that Defendant not alienate or transport any CHEP pallets currently in its possession, and (iii) further mandating that Defendant return to CHEP any CHEP pallets currently in Defendant's possession.

**VERIFIED COMPLAINT**

2. Entry of a Final Judgment and Order in CHEP's favor and against Defendant in the amount of $122,500.00, as well as any pre-judgment interest and any other relief that the Court deems just and reasonable.

Dated: October 31, 2024

Respectfully submitted,

/s/ Sarah E. Meyer
Sarah E. Meyer (Bar No. 29448)

/s/ Hillary V. Colonna
Hillary V. Colonna (Bar No. 19704)
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
Phone: (410) 545-5800
Email: Sarah.Meyer@wbd-us.com
Hillary.Colonna@wbd-us.com

Samual A. Miller (*pro hac vice application forthcoming*)
Florida Bar No. 034991
AKERMAN LLP
420 South Orange Avenue Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
E-mail: samual.miller@akerman.com

Rola Daaboul (*pro hac vice application forthcoming*)
Texas Bar No. 24068473
AKERMAN LLP
500 W. 5th Street, Ste 1210
Austin, Texas 78741
Phone: (737) 999.7108
rola.daaboul@akerman.com

**Attorneys for Plaintiff CHEP USA**

**VERIFIED COMPLAINT**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Mario Birsa, in my capacity as National Manager, Asset Protection and Security of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 6-55 are true and correct to the best of my knowledge.

By: _____
Name: Mario Birsa
Title: National Manager, Asset Protection and Security, CHEP USA

Date: October 28, 2024

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Lisa Marie Kelemen, in my capacity as Regional Manager, Asset Protection and Security of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 34 and 35 are true and correct to the best of my knowledge.

By: _____
Name: Lisa Marie Kelemen
Title: Regional Manager, Asset Protection and Security, CHEP USA

Date: October 28, 2024

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Andres Padilla, in my capacity as Asset Recovery Representative of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 34 and 38 are true and correct to the best of my knowledge.

By: _/s/ signature_
Name: Adres Padilla
Title: Asset Recovery Representative, CHEP USA

Date: October 28, 2024

**VERIFIED COMPLAINT**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Mario Birsa, in my capacity as National Manager, Asset Protection and Security of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 6-55 are true and correct to the best of my knowledge.

By: */s/ Mario Birsa*
Name: Mario Birsa
Title: National Manager, Asset Protection and Security, CHEP USA

Date: October 28, 2024

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Lisa Marie Kelemen, in my capacity as Regional Manager, Asset Protection and Security of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 34 and 35 are true and correct to the best of my knowledge.

By: */s/ Lisa Kelemen*
Name: Lisa Marie Kelemen
Title: Regional Manager, Asset Protection and Security, CHEP USA

Date: October 28, 2024

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Andres Padilla, in my capacity as Asset Recovery Representative of CHEP USA, hereby verify under penalty of perjury that I have reviewed the foregoing Complaint and that the following allegations in Paragraphs 34 and 38 are true and correct to the best of my knowledge.

By: _____
Name: Adres Padilla
Title: Asset Recovery Representative, CHEP USA

Date: October 28, 2024

**VERIFIED COMPLAINT**